LEROY NEUBERG *et al.*, Plaintiffs-Appellants, *v.* MICHAEL REESE HOSPITAL AND MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 81—3160, 82—66 cons.

Opinion filed August 29, 1983.—Rehearing denied October 17, 1983.

Charles E. Adler, of Law Offices of Joseph I. Adler, of Chicago, for appellants.

Lord, Bissell & Brook, of Chicago, for appellees Michael Reese Hospital and Medical Center and Michael Reese Research Foundation.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Samuel J. Pearlman.

Pretzel & Stouffer Chartered, of Chicago, for appellees Executors of the Estate of Philip Rosenblum.

JUSTICE McGLOON delivered the opinion of the court:

Tonsil X-ray treatment was administered to plaintiffs' sons (Leland and Joel Neuberg) in 1947, prior to the discovery that tonsil radiation was linked to thyroid cancer. One son developed thyroid cancer and the other developed a nodule that was thought to be cancerous. The treatment allegedly caused plaintiffs to suffer "great painful mental, psychological and emotional trauma as well as pain and worry over the present and future health of their sons." These consolidated appeals relate to actions filed by plaintiffs (Leroy and Sari Neuberg) in 1975 for intentional infliction of emotional distress and in 1980 for fraud.

In case No. 81—3160, plaintiffs appeal the dismissal of their motion for rehearing whereby plaintiffs sought to vacate the court's prior order dismissing plaintiffs' amended section 72 petition.

In case No. 82—66, plaintiffs appeal from the trial court's order of July 1, 1981, dismissing plaintiffs' action for fraud on *res judicata* grounds.

We affirm in part, reverse in part and remand.

Michael Reese Hospital and Medical Center (Michael Reese) accepted Leland and Joel Neuberg as patients for treatment of tonsilitis in 1947. At that time, an X-ray treatment involving the application of radiation to the throat and neck areas was extensively used as an alternative to surgery for tonsilitis and lymphadenitis. The Neuberg boys received X-ray treatments to shrink the inflammation of their enlarged tonsils upon the recommendation of Dr. Philip Rosenblum, the boys' treating physician. Dr. Erich M. Uhlmann was the radiologist in charge of the X-ray treatments the boys received. Both doctors died prior to the filing of plaintiffs' complaint. Their respective estate representatives were joined and remain defendants-appellees in case No. 82—66.

Although Drs. Arthur Rosenblum and Samuel J. Pearlman never treated the Neuberg children, they are named as party defendants in both actions. Dr. Rosenblum was a member of the Pediatrics Department at Michael Reese and an associate of Dr. Philip Rosenblum. Dr. Pearlman authored medical publications which advocated the use of X-ray treatments and was a member of the ear, nose, and throat department at Michael Reese.

Michael Reese and Michael Reese Research Foundation are also named party defendants in both actions. Allegedly, the hospital and foundation failed to use reasonable diligence in employing the other named defendants, negligently used the X-ray radiation procedure as a treatment, and committed assaults on the Neuberg sons.

Leland Neuberg developed cancer of the thyroid gland in 1962 and had to under a thyroidectomy and radical neck resection. In 1974, Joel Neuberg developed a nodule on his thyroid gland that was suspected of being cancerous.

As scientific evidence linking thyroid cancer to tonsil radiation became available, Michael Reese discontinued or reduced its use of the procedure. The proximate causal connection between radiation and cancer was acknowledged in 1975 when Michael Reese contacted former patients for re-examination.

The procedural history of this litigation is pertinent to the disposition of the issues raised.

I

(No. 81—3160)

On November 12, 1975, plaintiffs filed an action against defendants for intentional infliction of emotional distress. The emotional distress claim was based upon the allegation that plaintiffs suffered

great emotional trauma over their sons' conditions.[1] Plaintiffs' amended complaint, filed in 1976, included allegations that defendants were guilty of fraudulent concealment. On October 1, 1976, the trial court granted defendants' motion to dismiss plaintiffs' amended complaint on the ground that it failed to state a cause of action under Illinois law. Plaintiffs did not attempt to file a second amended complaint, but chose to appeal the dismissal. This court affirmed the trial court's dismissal of plaintiffs' complaint on May 22, 1978, holding that even given the most favorable inferences from plaintiffs' pleadings their complaint failed to state a cause of action of recovery. *Neuberg v. Michael Reese Hospital* (1978), 60 Ill. App. 3d 679, 377 N.E.2d 215.

Thereafter, plaintiffs did not file a petition for rehearing nor did they move for leave to appeal to the Illinois Supreme Court. Instead, plaintiffs sought leave to file a second amended complaint, which requested the same relief and attempted to allege the same cause of action as was alleged in their previously dismissed complaint on which plaintiffs stood through appeal. Plaintiffs' motion was denied on July 2, 1979.

On November 7, 1980, plaintiffs filed a section 72 petition in the circuit court requesting that the October 1, 1976, judgment of the circuit court and the May 22, 1978, judgment of this court be set aside. Defendants moved to dismiss the section 72 petition, alleging that (1) the trial court lacked jurisdiction to vacate the appellate court's decision; (2) the section 72 petition was filed more than two years after the entry of the relevant orders; and (3) the petition did not show due diligence or meritorious grounds for vacating the prior judgments. Defendants also moved for section 41 costs. Ill. Rev. Stat. 1981, ch. 110, par. 41.

After several continuances, plaintiffs were granted leave to file an amended section 72 petition. Defendants moved to dismiss the amended petition.

After a hearing on August 5, 1981, the trial court allowed defendants' motion and entered a final order dismissing the amended section 72 petition. The order included the express finding that "There is no just reason to delay enforcement or appeal." On September 2, 1981, plaintiffs filed a motion for rehearing or reconsideration requesting the circuit court to vacate its August 5, 1981, order dismissing plaintiffs' amended section 72 petition.

Following a hearing on November 25, 1981, the trial court dis-

---

[1] A separate suit on behalf of plaintiffs' sons was filed in Federal court and is still pending there.

missed plaintiffs' motion for rehearing. On December 21, 1981, plaintiffs filed a notice of appeal from the order of August 5, 1981, dismissing their amended section 72 petition and the order of November 25, 1981, dismissing their motion for rehearing.

Plaintiffs first contend that the trial court misconstrued the nature of a section 72 petition. They specifically argue that their notice of appeal was timely filed since the motion for rehearing directed against the judgment denying their amended section 72 petition tolled the running of the 30-day period for filing plaintiffs' notice of appeal. We agree. See *Burnicka v. Marquette National Bank* (1982), 88 Ill. 2d 527, 431 N.E.2d 358.

Supreme Court Rule 304(b)(3) (73 Ill. 2d R. 304(b)(3)) provides that "[a] judgment or order granting or denying any of the relief prayed in a petition under section 72 of the Civil Practice Act ***" is final and appealable. Rule 303(a) (73 Ill. 2d R. 303(a)) provides that timely notice of appeal must be filed within 30 days of the date on which the circuit court judgment becomes final.

Defendants argue that by reading these statutory provisions together, it becomes clear that a party has 30 days from the denial of a section 72 petition within which to file a notice of appeal. Furthermore, they contend that the time for appeal is not tolled by the filing of a motion for rehearing. They cite *In re Application of County Collector* (1981), 95 Ill. App. 3d 1118, 420 N.E.2d 1055, and *City Auto Paint & Supply, Inc. v. Brandis* (1979), 73 Ill. App. 3d 863, 392 N.E.2d 703, to support their contentions.

However, the Illinois Supreme Court recently rejected this view in *Burnicka v. Marquette National Bank* (1982), 88 Ill. 2d 527, 431 N.E.2d 358. The defendant in *Burnicka* filed a section 72 petition seeking to vacate a default judgment entered against them. The petition was granted on October 31, 1979. Plaintiffs did not file a notice of appeal from the granting of defendant's section 72 petition, but within 30 days, they filed a motion to set aside that judgment. Their motion was denied on January 3, 1980. Within 30 days after the order of January 3, plaintiffs filed a notice of appeal from the judgments of October 31, 1979 and January 3, 1980. The appellate court dismissed the appeal for want of jurisdiction. 89 Ill. App. 3d 1201, 417 N.E.2d 271.

In reversing the appellate court, the supreme court reiterated that a petition under section 72 is the filing of a new action. (See *Reuben H. Donnelley Corp. v. Thomas* (1979), 79 Ill. App. 3d 726, 398 N.E.2d 972.) The court concluded that the motion to set aside the judgment is a post-trial motion allowable under Rule 303(a) which sets

the 30-day limit for filing the notice of appeal from the entry of the final judgment" \*\*\* or, if a timely post-trial motion directed against the judgment is filed, \*\*\* within 30 days after the entry of the order disposing of the motion." 73 Ill. 2d R. 303(a).

Applying the above reasoning, the court held:

> "\*\*\* [i]f within 30 days of the grant or denial of a section 72 petition a post-trial motion directed against that judgment is filed, the motion will extend the time for filing a notice of appeal until 30 days after the order disposing of the motion is entered." *Burnicka v. Marquette National Bank* (1982), 88 Ill. 2d 527, 531, 431 N.E.2d 358, 361.)

In the instant case, plaintiffs' post-trial motion was filed within 30 days of the denial of their amended section 72 petition. As in *Donnelley*, it was the first such motion filed and therefore cannot be characterized as successive or repetitious. (See *Burnicka*, wherein the court stated that successive post-judgment motions will not be recognized.)

■ Applying the holding in *Burnicka* to the instant case, we find that the trial court erred in dismissing plaintiffs' motion for rehearing on the grounds that it lacked jurisdiction over the matter. The judgment of the circuit court denying plaintiffs' motion for rehearing for lack of jurisdiction is reversed and the cause is remanded for consideration of the motion.

## II

### (No. 82—66)

On September 30, 1980, plaintiffs filed a complaint purporting to state a cause of action for fraud against defendants. Defendants moved to dismiss. On July 1, 1981, the trial court entered an order striking plaintiffs' complaint as to all defendants without leave to amend. It was further ordered that plaintiffs' action be dismissed entirely on the grounds of *res judicata*. Plaintiffs filed a petition for rehearing on July 29, 1981. After a hearing, the trial court reaffirmed its previous finding that the action was barred. The order was entered on December 11, 1981, and on December 31, 1981, plaintiffs filed their notice of appeal.

■ The issue presented by appeal in case No. 82—66 is whether the trial court properly dismissed plaintiffs' complaint on grounds of *res judicata*. We conclude that it did.

The doctrine of *res judicata* bars a second adjudication where there is a former adjudication on the merits by a court of competent jurisdiction. (*Yaw v. Beeghly* (1982), 109 Ill. App. 3d 627, 440 N.E.2d

1066.) In order to invoke the bar of *res judicata* an identity of parties (or their privies), subject matter, and the cause of action must exist between the two actions. (*O'Neill v. DeLaney* (1980), 92 Ill. App. 3d 292, 415 N.E.2d 1260.) When properly invoked the judgment in the former suit is conclusive not only as to all questions actually decided, but also as to all questions which could have been litigated in the action. *Beeghly; Thornton v. Williams* (1980), 89 Ill. App. 3d 544, 412 N.E.2d 157.

The dismissal of plaintiffs' amended complaint for failure to state a cause of action for intentional infliction of emotional distress was a final judgment upon the merits. (73 Ill. 2d R. 273.) The dismissal order was affirmed by this court. (*Neuberg*.) The filing of plaintiffs' section 72 petition does not affect the order or suspend its operation. Ill. Rev. Stat. 1981, ch. 110, par. 72(4).

■ Plaintiffs further contend that the judgment in the 1975 action is not on the merits because the theory of recovery which they presented (intentional infliction of emotional distress upon nonimpacted third parties) was determined to be unavailable to them. The fact that the theory of recovery in the earlier action was held not to state a cause of action does not afford plaintiffs the right to bring a second action based upon a different theory. Even if different theories of recovery are sought, where the same facts are essential to the maintenance of either proceeding, there is identity between the causes of action and *res judicata* bars the latter action. (See *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 421 N.E.2d 278, and cases cited therein.) (*Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 223 N.E.2d 865, *cert. denied* (1967), 389 U.S. 874, 19 L. Ed. 2d 157, 88 S. Ct. 165.) Having reviewed the pleadings in the two proceedings, we find that there is no material difference between the separate causes of action. The issues raised in both complaints relate to the X-ray treatments received by plaintiffs' sons and are grounded upon the same duties that defendants allegedly owed to plaintiffs. (*Baker*.) The evidence relied upon to establish fraud (the publicity and media pronouncements, the articles published in medical journals, and the recall program) is also relied upon to establish intentional infliction of emotional distress. Here, as in *Morris* all that has been substituted in the second lawsuit is a different theory of recovery.

Plaintiffs' theory of recovery based upon fraud is no more than a substitution of labels. Moreover, allegations of fraudulent concealment are included in the complaint filed in 1975 as well as the one filed in 1980. To allow plaintiffs to avoid the bar of *res judicata* under such circumstances would undermine its very purpose.

■ Finally, plaintiffs contend that the doctrine of *res judicata* was not properly invoked because the parties to the two actions are different. They argue that their complaint for fraud named the following additional defendants: the estate of Philip Rosenblum, the estate of Erich M. Uhlmann, Lionel Cohen, Martin Coleman and unknown members of the governing board of Michael Reese since 1947.

The estates of Drs. Philip Rosenblum and Erich M. Uhlmann were dismissed from the former action pursuant to a motion to quash prior to the time that plaintiffs' complaint was dismissed on the merits. Thereafter, plaintiffs made no efforts to bring the estates back into the case before the final order dismissing the amended complaint as to all other defendants was entered. To require the estates to defend a second action would be patently unfair since no person should be unnecessarily harassed with a multiplicity of lawsuits. (*Radosta v. Chrysler Corp.* (1982), 110 Ill. App. 3d 1066, 443 N.E.2d 670; *Bonanno v. LaSalle & Bureau County R.R. Co.* (1980), 87 Ill. App. 3d 988, 409 N.E.2d 481.) Moreover, Dr. Philip Rosenblum was an associate in the pediatric practice of Dr. Arthur Rosenblum, a named defendant. Therefore, the estate was in privity with Dr. Arthur M. Rosenblum for the purpose of applying the doctrine of *res judicata*. (*Bonanno.*) Accordingly, the judgment dismissing plaintiffs' first action against Dr. Arthur M. Rosenblum also bars a subsequent action against the estate of Philip Rosenblum.

Likewise, Dr. Uhlmann, Dr. Coleman and Dr. Cohen are alleged to have been agents or employees of Michael Reese. This is also true with respect to the unknown members of Michael Reese's governing boards since 1947. It is well established that a claim against an employee predicated on the same acts which form the basis of liability of an employer will be barred when a prior judgment bars a subsequent action against the employer. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217; *Muscare v. Voltz* (1982), 107 Ill. App. 3d 841, 438 N.E.2d 620; *Bonanno.*) The operative facts which would establish liability on the part of Michael Reese are identical to those which indicate its employees liability. We find that plaintiffs attempt to name additional defendants to avoid the applicability of the doctrine of *res judicata* is without legal effect.

■ Finally, we must address the issues raised by defendants in their cross-appeal concerning the trial court's denial of their motion for costs and attorney fees. At various stages of this litigation, defendants filed motions for costs and attorney fees pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41).

On June 25, 1981, and June 30, 1981, hearings were held on

defendants' motions. After the hearings, the trial court entered an order dismissing plaintiffs' 1980 complaint for fraud on the grounds of *res judicata*. On July 1, 1981, the court also entered an order denying defendants' section 41 motion for expenses incurred with respect to defending the action for fraud.

Thereafter, plaintiffs filed a petition for rehearing seeking to set aside the court's order striking their complaint. On September 22, 1981, defendants filed a response to the petition. They also filed a second section 41 motion for costs and attorney fees. Although the court held an extensive hearing on plaintiffs' petition for rehearing, defendants' second motion for costs was not considered.

On cross-appeal, defendants contend that the trial court erred in denying their motion for costs on July 1, 1981. They argue that plaintiffs persisted in this litigation in bad faith, without reasonable cause and for the purpose of harassment.

Section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41) provides in part:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

The granting or denial of penalties under section 41 rests within the sound discretion of the trial court and will not be overturned absent a clear showing that the court abused its discretion. *Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297.

In the instant case, the trial court determined that plaintiffs' action for fraud was brought without good cause and constituted harassment. However, the court held that plaintiffs' allegations were not found to be untrue and denied defendants' motions. We have examined the record and found nothing to indicate that the trial court abused its discretion. We hold that the trial court's order of July 1, 1981, denying defendants' motion for expenses was proper.

■ However, we agree with defendants' contention that they are entitled to a hearing on their second section 41 motion for costs filed on September 22, 1981, in response to plaintiffs' petition for rehearing. The fact that no hearing was held thereon is evidenced by the court's order of December 11, 1981, which stated:

> "This Court makes no additional finding on the requests of various defendants for costs and attorneys' fees, this matter having been argued only in defendants' response to plaintiffs' Peti-

tion for Rehearing and having been denied in the order of June 30, 1981."

In *Pole Realty Co. v. Sorrells*, the Illinois Supreme Court held that a movant is entitled to a hearing on whether to permit penalties under section 41 prior to the trial court's denial of its motion. Accordingly, we remand this matter to the trial court for a hearing on defendants' second section 41 motion.

For the reasons stated, we reverse the circuit court's judgment denying plaintiffs' motion for rehearing in case No. 81—3160. In case No. 82—66: (1) we affirm that part of the court's judgment dismissing the second action on *res judicata* grounds; (2) we affirm that part of the court's judgment denying defendants' section 41 costs; and (3) we reverse the court's judgment insofar as it denied defendants' section 41 costs (filed in response to plaintiffs' petition for rehearing), without a hearing. The causes are remanded to the circuit court of Cook County for further proceedings consistent with this opinion.

Case No. 81—3160, reversed and remanded.
Case No. 82—66, affirmed in part, reversed and remanded in part.

BUCKLEY, P.J., and CAMPBELL, J., concur.