# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Ross Advertising, Inc. v. Heartland Bank & Trust Co.*, 2012 IL App (3d) 110200**

---

| | |
|---|---|
| Appellate Court Caption | ROSS ADVERTISING, INC., CHARLENE J. DEVORE, MARK J. DOOLITTLE, ARTHUR WAYNE FLITTNER, and DAVID A. GOERS, Plaintiffs-Appellants, v. HEARTLAND BANK AND TRUST COMPANY, an Illinois State Bank, and DON SHAFER, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-11-0200 |
| Filed | May 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action against defendant bank and an officer alleging breach of contract, breach of the implied duty of good faith and fair dealing and tortious interference with contract and business relations arising from the termination of plaintiffs' line of credit, the placement of a hold on their bank account and other actions to enforce plaintiffs' obligations to the bank, the entry of summary judgment for defendants was affirmed, since defendants' actions complied with the terms of the loan documents executed by plaintiffs and plaintiffs' claims were barred by *res judicata* or collateral estoppel. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-L-17; the Hon. Scott A. Shore, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Samuel B. Zabek and Thomas E. Leiter, both of Leiter Group, of Peoria, for appellants.

Timothy J. Howard and Graciela M. Zamudio, both of Howard & Howard Attorneys, PLLC, of Peoria, for appellees.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.

Justices Carter and Wright concurred in the judgment and opinion.

## OPINION

¶ 1    This case involves claims brought by a corporate borrower and its guarantors against a lender. Defendant, Heartland Bank and Trust Company (Heartland), issued plaintiff, Ross Advertising, Inc. (Ross), a $750,000 revolving line of credit for one year secured by a promissory note executed by Ross and guaranteed by individual plaintiffs, Charlene J. Devore, Mark J. Doolittle, Arthur Wayne Flittner, and David A. Goers. The plaintiffs filed a complaint against Heartland and its loan officer, Donald L. Shafer (Shafer), which the circuit court dismissed. The plaintiffs subsequently filed an amended complaint in three counts (the complaint). In count I, Ross asserted a claim against Heartland for breach of contract and breach of the implied duty of good and fair dealing. In count II, Ross asserted a claim against Heartland and Shafer for tortious interference with contract and business relations. In count III, the plaintiff guarantors asserted claims against Heartland and Shafer for tortious interference with contract and business relations.

¶ 2    The defendants filed a motion for summary judgment, which the circuit court granted. After the circuit court denied the plaintiffs' motion to reconsider, the plaintiffs timely appealed the circuit court's grant of summary judgment.

¶ 3                    BACKGROUND

¶ 4    In 2005, Heartland issued Ross a revolving line of credit in the amount of $650,000. Heartland renewed the line of credit for the next several years. On April 1, 2009, after performing a full review of Ross's financial condition (which included a review of Ross's then-current financial statements), Heartland again renewed the loan, this time extending Ross a $750,000 revolving line of credit for one year secured by a promissory note executed by Ross (the Note).

¶ 5    The Note provided that Ross agreed to pay the loan "in one payment of all outstanding principal plus all accrued unpaid interest on April 1, 2010." The Note required Ross to make

regular monthly payments of all accrued unpaid interest due as of each payment date on the first of each month, beginning on May 1, 2009. However, the Note did not require Ross to make any principal payments until April 1, 2010.

¶ 6 The Note provided that "[u]pon default, [Heartland] may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then [Ross] will pay that amount." The Note listed various events or conditions which "shall constitute an event of default" under the Note, including "[t]he dissolution or termination of [Ross's] existence as a going business" and "the insolvency of [Ross]." The Note also stated that Heartland "will have no obligation to advance funds under th[e] Note" if: "(a) [Ross] or any guarantor is in default under the terms of this Note or any agreement that [Ross] or any guarantor has with [Heartland], including any agreement made in connection with the signing of this Note; or (b) [Ross] or any guarantor ceases doing business or is insolvent."

¶ 7 Moreover, the Note stated that Ross "and any other party that signs, guarantees, or endorses the Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor."

¶ 8 Each of the guaranty agreements signed by the individual guarantors provided that each guarantor waived the right to require Heartland to "make any presentment, protest, demand, *or notice of any kind*, including notice of any non-payment of the Indebtedness, or of any non-payment related to any collateral, or any notice of any action or non-action on the part of the Borrower." (Emphasis added.)

¶ 9 Don Shafer was the loan officer for Heartland who handled the loan with Ross. On July 27, 2009, Shafer met with David Goers, the president of Ross, and Mark Doolittle, a vice president of Ross, both of whom were guarantors of Ross's obligations under the Note. Goers testified in his deposition that the purpose of the July 27, 2009, meeting was to inform Mr. Shafer of changes that had recently taken place inside Ross, including the fact that two of Ross's shareholders had resigned that day. During the meeting, Goers gave Shafer a document detailing the measures Ross was taking to deal with the recessionary economy (such as cost reductions and other measures) and describing Ross's current business plan, including its plan for servicing existing clients and acquiring new clients. The document also included cash flow projections. At the conclusion of the meeting, Shafer asked Goers to provide him with Ross's updated balance sheet and income statement so he could review Ross's current financial position.

¶ 10 The next morning, Shafer sent Goers an e-mail stating that, in light of their discussion during the meeting on July 27, 2009, Shafer was "sure" that Heartland would be requiring Ross's owners to provide Heartland with additional collateral in the form of cash, real estate, or securities. Shafer stated that the amount of additional collateral would depend upon Ross's current inventory, receivables, and equipment balances, but he guessed it would be approximately $500,000. In addition, Shafer told Goers that Heartland might also require Ross's owners to provide a capital infusion of approximately $100,000, but he would not know for certain until he reviewed Ross's updated financial information.

¶ 11 During his deposition, Shafer testified that he sent this e-mail to Goers because Goers had told him during the July 27, 2009, meeting that Ross was suffering losses and that the

decline in business had resulted in a drop in the company's receivables. Accordingly, Shafer was concerned that the outstanding balance on the line of credit was substantially higher than Ross's existing collateral for the loan (which consisted of Ross's receivables and inventory), and he wanted to get Ross back into a "positive position."

¶ 12    Later that day, Shafer received Ross's financial statement for the period ending June 30, 2009. The statement indicated that Ross's total capital was negative $256,771.12. After reviewing this financial statement, Shafer told Goers that Heartland would require Ross to provide $500,000 in additional collateral, plus a cash infusion of approximately $300,000.

¶ 13    Shafer met with Goers and four other owners of Ross on July 29, 2009, to discuss these demands. Goers and three other shareholders who were present at the meeting testified that Shafer told them during the meeting that if Ross or the guarantors were not able to satisfy Shafer's demands for additional collateral and a cash infusion, Shafer would turn the loan over to Heartland's attorneys for collection against the guarantors. Shafer denied that he made this statement during the meeting. At the time of the July 29, 2009, meeting, the outstanding principal balance on the note was $690,000. After the meeting, Ross took an additional principal advance of $33,000.

¶ 14    Goers and three other Ross shareholders testified that, on or about September 11, 2009, Ross's shareholders decided that Ross could not meet Shafer's demands and, as a result, would have to close the business. Ross's shareholders met with Shafer again on September 15, 2009, and told him that they were not able to meet his demands and that Ross would be closing the business on September 30, 2009. Later that day, Shafer terminated Ross's line of credit, placed a hold on Ross's checking account, and applied proceeds from Ross's checking account to pay the outstanding loan balance on the Note.

¶ 15    During his deposition, Shafer testified that, when he learned on July 28, 2009, that Ross had a "negative net worth" of approximately $257,000, Heartland concluded that Ross was insolvent and that the bank considered this to be a "default situation" under the terms of the Note.

¶ 16    However, Thomas Sapp, the certified public accountant who prepared Ross's financial statements, testified by affidavit that, as of June 30, 2009, and July 31, 2009, Ross was a going business that was able to and did pay its debts in the ordinary course of business and was "not insolvent." Sapp opined that Heartland's termination of the credit line and placement of a hold on Ross's bank account on or about September 15, 2009, "prevented Ross from conducting business in the usual and customary manner." However, Sapp opined that, before Heartland took these actions, Ross was able to pay its debts and was not insolvent from August 31, 2009, through September 15, 2009.

¶ 17    On October 22, 2009, Heartland sent Ross and the guarantors a notice of default due to insolvency and closure of the business and a demand for payment of the outstanding principal and interest under the Note.

¶ 18    On December 3, 2009, Heartland filed a complaint and confession of judgment against Ross in the circuit court of Peoria County, case number 09-L-365. Heartland obtained a judgment by confession against Ross in the amount of $731,166.33. Pursuant to Illinois Supreme Court Rule 276 (eff. July 1, 1982), Ross filed a "Motion to Vacate Judgment by

Confession," which the circuit court granted on March 19, 2010.

¶ 19    Heartland subsequently filed a motion for summary judgment. In opposition to Heartland's motion, Ross argued that summary judgment was inappropriate because there were genuine issues of material fact as to whether Heartland's demand for additional collateral and a cash infusion caused Ross to go out of business, thereby causing Ross to default and making it impossible for Ross to perform its obligations under the Note. In addition, Ross argued that there were genuine issues of material fact as to whether Heartland breached its duty of good faith and fair dealing, thereby excusing Ross's default, when Shafer (1) demanded that Ross provide additional cash and collateral at a time that Ross was "not insolvent" and "not in default," (2) informed Ross that Heartland would terminate the line of credit and seek collection on the Note unless Ross met his demand, and (3) "unilaterally decided to terminate Ross's line of credit and remove funds without any notice whatsoever to Ross."

¶ 20    The circuit court granted Heartland's motion for summary judgment. The court's order states that "there are no issues of material fact" because "[d]efendant was in default, as alleged, when it ceased operations at the end of September, 2009," and "[a]ny actions taken by Plaintiff prior to that date, which defendant alleges caused the default, were authorized by the loan documents." Ross filed a motion to reconsider, which the circuit court denied. In explaining its ruling, the court noted that it was undisputed that Ross went out of business, which was an event of default under the Note. Moreover, the court stated that it did not believe that Heartland did anything improper or illegal when it asked Ross to provide additional collateral. The court also noted that Ross could have simply refused to provide any additional collateral, but, instead, it voluntarily chose to go out of business, triggering Heartland's rights under the Note to demand payment and to freeze and set off Ross's checking accounts. Ross appealed. This court affirmed the circuit court's judgment in *Heartland Bank & Trust Co. v. Ross Advertising, Inc.*, 2012 IL App (3d) 100774-U.

¶ 21    Heartland filed a separate action against the six individual guarantors in the circuit court of Peoria County seeking to collect on the debt owed by Ross (case number 10-L-16). Heartland filed a motion for summary judgment. In opposition to Heartland's motion, Ross raised the same arguments that it had raised in opposition to Heartland's motion for summary judgment in case number 09-L-365. Although the circuit court dismissed Heartland's claims against two of the guarantors, it granted Heartland's motion for summary judgment against the four remaining guarantors. This court affirmed the circuit court's judgment in *Heartland Bank & Trust Co. v. Goers*, 2012 IL App (3d) 110030-U.

¶ 22    The instant action involves a complaint filed by Ross and four of the individual guarantors against Heartland and Shafer. In count I of the plaintiffs' amended complaint, Ross asserted a claim against Heartland for breach of contract and "breach of the implied duty of good and fair dealing." Ross alleged that Heartland breached the loan agreement and acted arbitrarily in a manner inconsistent with the parties' expectations by terminating the line of credit without notice at a time when Ross was "not in default." Ross also alleged that Ross had "performed all of its obligations" under the loan agreement prior to Heartland's breach and that Heartland's actions caused Ross to go out of business. In count II, Ross asserted a claim against Heartland and Shafer for tortious interference with contract and

business relations. Ross alleged that Heartland and Shafer wilfully and unreasonably demanded that Ross provide additional collateral and cash, under threat to withhold credit, knowing that Ross could not meet these demands. Ross alleged that Heartland and Shafer knowingly caused Ross to go out of business and to lose existing and prospective customers. In count III, the plaintiff guarantors brought claims against Heartland and Shafer for tortious interference with contract and business relations which were substantively identical to the claims that Ross asserted in count II.

¶ 23    Heartland filed a motion for summary judgment. In support of its motion, Heartland filed two "Requests for Judicial Notice" which attached copies of the judgment order on the Note in case number 09-L-365 and the judgment against the individual guarantors in case number 10-L-16. The circuit court granted Heartland's motion. The circuit court found that the defendants were entitled to act upon the Note and the individual guaranty agreements on the basis of Ross's insolvency and that there was no genuine issue of material fact as to the defendants' right to call the loan, declare a default on the basis of Ross's insolvency, enforce their right of setoff under the Note, and enforce the guaranty agreements. Accordingly, the court found that Heartland and Shafer did not breach their duty of good faith and fair dealing by taking these actions. The court found that the plaintiffs' allegation that Heartland and Shafer acted unreasonably was based on the factually unsupportable premise that the defendants did not have a contractual right to call in the loan, declare Ross in default, and enforce the obligations of the guarantors.

¶ 24    In addition, the court took judicial notice of the judgments previously entered against Ross in the prior cases and found that those judgments "establish[ed] both collateral estoppel and res judicata as to the issues that are required to be raised by [the] plaintiffs to sustain their cause of action in this litigation." Moreover, the court found that the plaintiffs' claims for tortious interference and punitive damages were barred by the economic loss doctrine announced in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982).

¶ 25    This appeal followed.


¶ 26                                    ANALYSIS

¶ 27    Summary judgment is proper if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). The purpose of summary judgment is not to try a question of fact, but simply to determine whether a genuine issue of triable fact exists. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203 (1996); *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). In determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Watkins*, 172 Ill. 2d at 203; *Sameer*, 343 Ill. App. 3d at 85.

¶ 28    A defendant moving for summary judgment bears the initial burden of proof. *Benson v. Stafford*, 407 Ill. App. 3d 902, 912 (2010). The defendant may meet its burden either by affirmatively showing that some element of the case must be resolved in its favor or by establishing that there is an absence of evidence to support the plaintiff's case. *Id.* To

withstand a defendant's motion for summary judgment, a plaintiff need not prove its case but must present a factual basis that would arguably entitle the plaintiff to a judgment. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996); *Benson*, 407 Ill. App. 3d at 912; see also *Hussung v. Patel*, 369 Ill. App. 3d 924, 931 (2007). In other words, the plaintiff "must present enough evidence to create a genuine issue of fact." *Hussung*, 369 Ill. App. 3d at 931. If a plaintiff cannot establish an element of her cause of action, summary judgment for the defendant is proper. *Id.* Moreover, summary judgment may be granted on the basis of *res judicata* or collateral estoppel. *Peregrine Financial Group, Inc. v. TradeMaven, L.L.C.*, 391 Ill. App. 3d 309, 320 (2009); *Schratzmeier v. Mahoney*, 246 Ill. App. 3d 871, 876 (1993). We review summary judgment rulings *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995).

¶ 29 In this case, the circuit court properly entered summary judgment for Heartland. As the circuit court correctly held, all of the claims asserted by the plaintiffs are barred by the doctrine of *res judicata*. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). *Res judicata* promotes judicial economy by preventing repetitive litigation and also protects parties from being forced to bear the unjust burden of relitigating essentially the same case. *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004).

¶ 30 When *res judicata* applies, it bars all matters that were offered to sustain or defeat a claim in the first action, as well as all matters that could have been offered. *Id.* Moreover, the doctrine bars a claim based on facts that would have constituted a counterclaim in the earlier proceeding where successful prosecution of the later action "would either nullify the earlier judgment or impair the rights established in the earlier action." *City of Rockford v. Unit Six of Policemen's Benevolent & Protective Ass'n,* 362 Ill. App. 3d 556, 562-63 (2005); see also *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 617 (2007).

¶ 31 For the doctrine to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 32 Each of these requirements is satisfied in this case. In case numbers 09-L-365 and 10-L-16, final judgments were entered by courts of competent jurisdiction, and we have affirmed those judgments.[1] In count I of the plaintiffs' amended complaint in this case, Ross asserts

---

[1]Ross argues that "a final adjudication on the merits has not been made whether Heartland breached its contractual obligations to Ross." Ross appears to suggest that, because of this, Heartland cannot establish that there has been a "final judgment on the merits" in the prior cases, which is required for the application of *res judicata*. Ross appears to misunderstand the "final judgment" requirement. To satisfy that requirement, Heartland need only establish that the prior litigation ended in a final judgment on the merits that was rendered by a court of competent jurisdiction. Ross does not and cannot dispute that the judgments rendered in case numbers 09-L-365 and 10-L-16 satisfied that requirement. Ross's argument appears to confuse the final judgment requirement with one of the requirements for the application of collateral estoppel, namely, that "an issue of fact or law"

a claim against Heartland for breach of contract and "breach of the implied duty of good and fair dealing." In support of this claim, Ross alleges that Heartland, acting through Shafer, breached the loan agreement and acted arbitrarily in a manner inconsistent with the parties' expectations by terminating the line of credit without notice at a time when Ross was "not in default." Ross also alleges that Ross had "performed all of its obligations" under the loan agreement prior to Heartland's breach and that Heartland's actions caused Ross to go out of business. Moreover, Ross alleges that Heartland "breached its implied and express obligations of good faith" in various dealings with Ross. For example, in the complaint's general allegations, which Ross restates and realleges in count I, Ross asserts that Shafer "arbitrarily demanded" that Ross provide additional collateral and a substantial cash infusion at a time when Ross was not in default.

¶ 33    Ross raised the identical claims in opposition to Heartland's motion for summary judgment in case number 09-L-365. In that case, Heartland moved for summary judgment on its complaint, which alleged that Ross had defaulted on the Note. Ross argued, *inter alia*, that summary judgment was inappropriate because there were genuine issues of material fact as to whether Heartland breached its duty of good faith and fair dealing when Shafer demanded that Ross provide additional cash and collateral and terminated Ross's line of credit without notice at a time that Ross was "not in default." In addition, Ross argued that there were genuine issues of material fact as to whether Heartland's actions (including Shafer's demand for additional collateral and a cash infusion) caused Ross to go out of business, thereby causing Ross to default and making it impossible for Ross to perform its obligations under the Note. The trial court rejected Ross's defenses, and we affirmed.

¶ 34    Accordingly, count I of Ross's complaint in this case raises the "same cause of action" that was litigated and decided in case number 09-L-365. In determining whether there is an identity of causes of action for purposes of *res judicata*, Illinois courts apply a "transactional" test. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Under this test, separate claims will be considered the same cause of action if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. *Id.* Here, the claims asserted by Ross in both cases arise from the same loan transaction between Ross and Heartland and involve the same actions taken by Heartland and Shafer. The very actions that Ross now claims constituted a breach of contract by Heartland (*i.e.*, Heartland's termination of the line of credit without notice at a time when Ross was "not in default") formed the basis of Ross's defense in the prior action. Ross concedes that Ross's claims in this case involve the "same cause of action" under the transactional test.

¶ 35    Moreover, the parties named in count I of Ross's complaint in this case are the same as, or in privity with, the parties in case number 09-L-365. Case number 09-L-365 was brought by Heartland against Ross. In count I of its complaint in this case, Ross named Heartland and Shafer, one of Heartland's loan officers, as defendants. The addition of Shafer as a defendant

---

relevant to the current litigation was "actually litigated and determined by a valid final judgment." (Internal quotation marks omitted.) *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 79 (2001).

in this case does not undermine the identity of the parties or otherwise defeat the application of *res judicata*. "[W]hen a prior judgment is a bar to a claim against an employer, a claim against an employee, predicated upon the same acts, is also barred." *Bonanno v. La Salle & Bureau County R.R. Co.*, 87 Ill. App. 3d 988, 995 (1980); see also *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 123-24 (1978); *Neuberg v. Michael Reese Hospital & Medical Center*, 118 Ill. App. 3d 93, 100 (1983). Ross's claims against Shafer in this case are predicated on the same acts that formed the basis of Ross's defenses against Heartland in case number 09-L-365 (*i.e.*, Shafer's allegedly "arbitrary" demand for additional capital and a cash infusion and his allegedly premature termination of Ross's line of credit). Because the trial court rejected Ross's defenses in case number 09-L-365, Ross may not reassert these claims against Shafer in this case. Nor may Ross avoid the bar of *res judicata* merely by naming Shafer as a defendant. See *Michael Reese Hospital*, 118 Ill. App. 3d at 100 (holding that the plaintiff's "attempt to name additional [employee] defendants to avoid the applicability of the doctrine of *res judicata*" was "without legal effect"). In any event, as an employee of Heartland, Shafer is in privity with Heartland for purposes of *res judicata*. See, *e.g.*, *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (holding that even though a bank was the only actual party in the first action, the other defendants in the second action were in privity with the bank for purposes of *res judicata* because they were directors, officers, employees, and attorneys of the bank).

¶ 36 Ross argues that *res judicata* does not apply here because, in case number 09-L-365, the circuit court held only that Ross breached its contractual obligations to Heartland but did not determine whether Heartland breached its contractual obligations to Ross. We disagree. As noted above, *res judicata* does not merely bar all matters that were actually presented and decided in the first action; it also bars all matters that *could* have been presented and decided in that action. *Arvia*, 209 Ill. 2d at 533; *River Park*, 184 Ill. 2d at 302. Accordingly, the doctrine bars a claim based on facts that would have constituted a defense or counterclaim in the earlier proceeding where successful prosecution of the later action "would either nullify the earlier judgment or impair the rights established in the earlier action." *City of Rockford*, 362 Ill. App. 3d at 562-63. Here, although Ross argued in case number 09-L-365 that Heartland breached its duty of good faith, it did not expressly argue that Ross breached the terms of the loan documents. Nevertheless, Ross could have raised the latter claim as a defense or as a counterclaim in case number 09-L-365. Moreover, if Ross were to prevail on its current claim that Heartland breached the loan documents, that would nullify the judgment rendered in case number 09-L-365. In rejecting Ross's defenses in that case, both the circuit court and this court found that the very actions that Ross now claims were contractual breaches by Heartland were both appropriate and authorized by the loan documents. A contrary ruling in this case would effectively annul that judgment.

¶ 37 Accordingly, the circuit court's judgment in case number 09-L-365, and our affirmance of that judgment, constitutes a final judgment on the merits that conclusively resolved the claims that Ross asserts against Heartland in count I of his complaint in this case. The claims raised in count I of Ross's complaint are therefore barred by *res judicata*.

¶ 38 The claims raised in counts II and III of Ross's complaint are also barred. In count II, Ross asserts a claim against Heartland and Shafer for tortious interference with contract and

"business relations." In support of this claim, Ross alleges that Heartland and Shafer wilfully and unreasonably demanded that Ross provide additional collateral and cash, under threat to withhold credit, knowing that Ross could not meet these demands. Ross alleges that, in performing these actions, Heartland and Shafer knowingly caused Ross to go out of business and to lose existing and prospective customers. Ross's tortious interference claim arises out of the same group of operative facts as Ross's defenses in case number 09-L-365, which the circuit court rejected. The basis for Ross's alleged liability in count II are the same actions by Heartland and Shafer that the circuit court found to be appropriate and authorized by the loan documents in case number 09-L-365. Accordingly, the claim is barred by *res judicata*, even though it asserts a theory of relief that was not litigated in case number 09-L-365. *River Park*, 184 Ill. 2d at 311. Moreover, Ross could have raised its tortious interference claim as a counterclaim in case number 09-L-365. Further, if Ross were to prevail on its tortious interference claim against Heartland and Shafer, the judgment in case number 09-L-365 would be nullified, because that judgment depended upon the trial court's finding that Heartland's actions were appropriate, justified, and authorized by the loan documents. A finding that Heartland and Shafer tortiously interfered with Ross's current or prospective clients by performing the same actions would necessarily invalidate that judgment, because it would entail a finding that Heartland's and Shafer's actions were an "intentional and *unjustified* inducement" of a breach of contract. (Emphasis added.) (Internal quotation marks omitted.) *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). For this additional reason, *res judicata* bars Ross's claim in count II. *City of Rockford*, 362 Ill. App. 3d at 562-63.

¶ 39    Count III is barred for similar reasons. In count III, the plaintiff guarantors assert claims against Heartland and Shafer for tortious interference with contract which are nearly identical in substance to the claims that Ross asserted in count II. Specifically, the guarantors allege that Heartland and Shafer arbitrarily demanded that Ross provide additional collateral and cash, under threat to withhold credit, knowing that Ross could not meet these demands and that Ross would go out of business as a result. The guarantors allege that, in performing these actions, Heartland intentionally caused Ross to go out of business. The guarantors also allege that Heartland and Shafer had a duty to refrain from interfering with the guarantors' accommodations and contracts of guaranty, and that Heartland and Don Shafer violated this duty by interfering with Ross's contracts and business relations, causing Ross to go out of business. Further, the guarantors allege that, as a direct and proximate result of Heartland's and Don Shafer's conduct, Ross went out of business and was unable to satisfy the loan, thereby leaving the guarantors with the liability for repayment of the loan.

¶ 40    This claim is barred by the decision of the circuit court of Peoria County in case number 10-L-16. In that case, Heartland filed an action against the six individual guarantors seeking to collect on the debt owed by Ross under the Note. Heartland filed a motion for summary judgment. In opposition to Heartland's motion, Ross argued that Heartland, acting through Shafer, had arbitrarily demanded additional collateral and cash, causing Ross to go out of business and thereby triggering the guarantors' liability under the guaranty agreements. The circuit court rejected the guarantors' defenses and granted summary judgment for Heartland. We affirmed the circuit court's judgment. The guarantors' claim for tortious interference in

this case is based on the same group of operative facts as the guarantors' defenses in case number 10-L-16. Moreover, case number 10-L-16 involved the same parties plus Don Shafer, who, as shown above, is considered identical to or in privity with Heartland for *res judicata* purposes. The claims raised in count III are therefore barred by *res judicata*. See *City of Rockford*, 362 Ill. App. 3d at 562-63.[2]

¶ 41   Ross's claims against Heartland and Shafer fail for additional reasons. First, in count I, Ross purports to assert a cause of action for "breach of the implied covenant of good faith and fair dealing." However, our supreme court has expressly declined to recognize such a cause of action. *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 293-94 (2001).

¶ 42   Moreover, most of the factual and legal issues central to Ross's claims in this case are barred by collateral estoppel. Collateral estoppel, also referred to as issue preclusion, is an equitable doctrine that promotes fairness and judicial economy by preventing the relitigation of factual or legal issues that have already been resolved in earlier actions. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). Under the doctrine of collateral estoppel, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Internal quotation marks omitted.) *Id.* at 79. Collateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication. *Id.*

¶ 43   In rejecting Ross's defenses and granting summary judgment for Heartland in case number 09-L-365, the circuit court held that Ross was "in default" when it ceased operations at the end of September 2009, and "[a]ny actions taken by [Heartland] prior to that date, which [Ross] alleges caused the default, were *authorized by the loan documents*." (Emphasis added.) Thus, the circuit court necessarily found that Heartland did not breach its contractual obligations to Ross. It also rejected Ross's defense that Heartland breached its duty of good faith, the same claim that Ross raises in this case. In affirming the circuit court's judgment, we also held that Heartland had not breached its duty of good faith and fair dealing and that Heartland's decision to close the line of credit without notice when it did was "expressly authorized by the Note." *Heartland Bank & Trust Co. v. Ross Advertising, Inc.*, 2012 IL App (3d) 100774-U, ¶ 40. In addition, we held that Ross had failed to allege facts which arguably suggest that Heartland caused Ross to go out of business. Each of these factual findings and legal conclusions was essential to the final judgment in case number 09-L-365, because the trial court could not have rejected Ross's defenses and granted summary judgment for Heartland without making those findings. Moreover, Ross raises the identical factual and

---

[2]Moreover, in the guaranty agreements, the guarantors waived the right to assert claims like those asserted in count III. Each of the individual guaranty agreements provides that "Guarantor *** waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim demand or right may be asserted by the Borrower, the Guarantor, or both."

legal issues in this case (*i.e.*, whether Heartland breached the loan documents or its duty of good faith when Shafer demanded additional collateral and cash and terminated the line of credit, whether Ross was in default at the time Shafer terminated the line of credit, and whether Heartland's and Shafer's actions caused Ross to go out of business). In addition, Ross was a party to the prior litigation. Thus, collateral estoppel applies, and Ross may not relitigate the factual and legal issues determined in case number 09-L-365. Because these factual and legal issues are central to Ross's claims in this case, Ross's claims in counts I and II cannot survive.

¶ 44     Because we find that all of the plaintiffs' claims are barred by *res judicata* or collateral estoppel, we do not need to address Heartland's other arguments for affirming the circuit court's judgment.

¶ 45                                    CONCLUSION

¶ 46     For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County granting Heartland's and Shafer's motion for summary judgment.

¶ 47     Affirmed.