2021 IL App (2d) 200099
No. 2-20-0099
Opinion filed January 20, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| McHENRY SAVINGS BANK, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 18-CH-631 |
| | ) | |
| PERRY MOY, MIRIAM MOY, THE | ) | |
| DEPARTMENT OF REVENUE, UNKNOWN | ) | |
| OWNERS, and NONRECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Michael J. Chmiel, |
| (Miriam Moy, Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1   In this mortgage foreclosure action, defendant,[1] Miriam Moy, appeals from an order of the

trial court that granted summary judgment to plaintiff, McHenry Savings Bank (Bank). On appeal,

Miriam argues that the trial court erred by granting plaintiff summary judgment, because

(1) *res judicata* barred the Bank's claim, due to its two earlier actions and its acceleration of the

_____

[1] The trial court entered an order of default as to defendants Perry Moy, the Department of

Revenue, unknown owners, and nonrecord claimants. These defendants are not part of this appeal.

note and (2) a genuine issue of material fact exists as to when Miriam defaulted on the loan. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On or about March 22, 2004, Miriam and Perry Moy, her husband at the time, executed a note in favor of the Bank in the amount of $442,000. The note was secured by a mortgage and the real property purchased by Miriam and Perry, commonly known as 8220 Crystal Springs Road, Woodstock, Illinois 60098 (property). As we detail, the Bank filed three separate foreclosure complaints regarding the mortgage. The first was filed on November 17, 2009, and Miriam prevailed in that action, following a bench trial. The second was filed on September 14, 2017, and it was dismissed with prejudice. The third was filed on November 17, 2018, and it was resolved through summary judgment in the Bank's favor, giving rise to this appeal.

¶ 4                                    A. The First Case

¶ 5     On November 17, 2009, the Bank filed a foreclosure complaint against Miriam, alleging that she defaulted on the mortgage for "failure to pay certain principal, interest, and late fees accruing through and beyond November 13, 2009, *** and despite demand, remained due and owing. As a result of said default for the mortgage, all amounts due have been accelerated." The Bank sought judgment on the note and foreclosure on the property secured by the mortgage. In July 2016, after a bench trial, the court determined that the Bank was "entitled to a judgment of foreclosure *** [because] the mortgage on the property *** has been in default since 2008 *** [and because Miriam] signed a note and mortgage for $442,000 and failed to make installment payments on the loan." Thereafter, the trial court granted Miriam's motion to reconsider and entered judgment in her favor and against the Bank. The court stated that the Bank established the existence of a note, a mortgage, and a default on payments. But the Bank failed to present sufficient

evidence regarding the amount of the debt owed by Miriam and the evidence was insufficient to support a judgment of foreclosure.

¶ 6                                    B. The Second Case

¶ 7     On September 14, 2017, the Bank filed a second foreclosure complaint against Miriam, alleging that she failed to make "monthly payments of principal and interest for November 2009 through the present, and had failed to pay real estate taxes on the mortgaged premises." Miriam moved to dismiss based on *res judicata*. In January 2018, the trial court granted Miriam's motion with prejudice.

¶ 8                                C. The Third Case (This Case)

¶ 9     On November 17, 2018, the Bank filed a third foreclosure complaint against Miriam, alleging the following. On August 24, 2018, the Bank declared Miriam to be in default under the note and the mortgage for failure to pay the monthly payments of principal and interest for the months of July and August 2018 and for failure to pay the first installment of real estate taxes due on June 4, 2018. The Bank provided Miriam notice of default and the past-due amount. As of August 24, 2018, the amount due under the note was $44,863.46. Miriam failed to cure the default within 30 days of the date of the notice of default, and the Bank, thereafter, accelerated all amounts due and owing under the note and demanded payment in full. As of September 26, 2018, the accelerated amount due on the note was $418,919.78. Interest, costs, late fees, advances, and attorney fees continued to accrue.

¶ 10    Miriam, *pro se*, filed a motion to dismiss based on *res judicata*. The Bank responded, arguing that *res judicata* did not apply because its complaint was a new cause of action in that it alleged a new default date. The trial court denied Miriam's motion to dismiss.

¶ 11     In April 2019, Miriam filed her answer to the Bank's complaint, again, arguing that the complaint was barred by *res judicata*. Miriam also disagreed that she was in default under the note and the mortgage for failure to pay principal and interest, because there was no amount due under the note as of December 7, 2016. Miriam noted that in the first foreclosure case, in 2016, the trial court found that the Bank failed to prove any amounts owed, and she contended that it cannot now claim these same amounts owed. Miriam did not address the Bank's allegation that Miriam was in default for failure to pay property taxes due June 4, 2018.

¶ 12     In May 2019, the Bank filed a motion for summary judgment, arguing that the first case did not impact this case because Miriam's failure to make installment payments for July and August 2018 are new defaults.

¶ 13     Miriam filed a response to the Bank's motion, and the Bank filed a reply. Thereafter, counsel filed an appearance and an amended response on Miriam's behalf. The Bank filed an amended reply.

¶ 14     On August 15, 2019, the trial court heard the arguments on the Bank's motion for summary judgment and took the matter under advisement.

¶ 15     On September 20, 2019, Miriam moved for leave to file a supplement to her amended response. The Bank filed a response. The court heard arguments on Miriam's motion for leave and took the matter under advisement with the Bank's motion for summary judgment.

¶ 16     On October 10, 2019, in a written order, the trial court granted the Bank summary judgment, stating,

> "*In summary analysis*, the Court agrees with the [Bank] with regard to both motions.

The Motion for Leave concerns a case argued on appeal, involving malpractice claims against previous counsel for the [Bank]. Other than referencing the proceedings before the other judges of this Circuit, that case has little else to do with the proceedings here. As such, the Motion for Leave should be denied.

The Motion for Summary Judgment is properly brought. Following the briefing, and with the arguments of the parties, the Court finds there is no genuine issue of fact or law with regard to the allegations against [Miriam]. As such, judgment in summary fashion should enter against her.

Accordingly, [the Bank's attorney] is requested to submit the draft of an Order for summary judgment in accordance with the findings of this Court." (Emphasis in original.)

¶ 17    On October 15, 2019, the court entered a judgment of foreclosure and sale of the property. The Bank filed its certificate of service of the notice of a January 16, 2020, sheriff's foreclosure sale of the property. A certificate of sale for the property was filed, indicating that the sale took place, as scheduled, on January 16, 2020. The Bank filed a motion to confirm the sheriff's sale and award possession. On January 30, 2020, the trial court entered an order approving the report of sale and distribution, confirming the sale, entering an *in rem* deficiency judgment, and awarding possession. The same day, Miriam filed a notice of appeal. The following day, Miriam filed a motion to stay enforcement of the court's order awarding possession, pending appeal. On February 10, 2020, the court granted Miriam's motion.

¶ 18    At the outset of the appeal, we note that Miriam requests that we strike certain statements contained in the Bank's brief for being inaccurate. Although we decline to strike any portion of the brief, we will nonetheless disregard any inaccurate statements.

¶ 19                                    II. ANALYSIS

¶ 20                                   A. Standard of Review

¶ 21    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). While a plaintiff need not prove her case to survive a motion for summary judgment, she must present a factual basis arguably entitling her to judgment in her favor. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. We review *de novo* the propriety of a trial court's grant of summary judgment. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Also, whether an action is barred by *res judicata* is a question of law, which this court reviews *de novo*. *A&R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 16.

¶ 22                                   B. *Res Judicata*

¶ 23    The central issue is whether *res judicata* prohibits this lawsuit. "*Res judicata* is a judicially created doctrine resulting from the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 49. Under the doctrine of *res judicata*, "a final judgment on the merits rendered by a court of competent jurisdiction bars a subsequent action between the same parties or their privies involving the same cause of action." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 21. The bar extends not only to what was decided in the first action but also includes those matters that could have been decided in the initial action. *Lopez*, 2017 IL 120643, ¶ 49.

¶ 24    For *res judicata* to apply, three requirements must be met: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies." *Wilson v. Edwards Hospital*, 2012 IL 112898, ¶ 9. The party invoking

the doctrine bears the burden of showing its applicability. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45.

¶ 25    Here, as the parties acknowledge, the dispute centers on whether the second requirement, identity of cause of action, was met. Illinois law uses the "transactional test" to determine whether two causes of action are identical for *res judicata* purposes. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310-11 (1998). The transactional test considers whether the claims arise from a common core of operative facts. *Id.* at 311. This depends in turn on a pragmatic consideration of whether the facts are related in time, space, origin, or motivation and form a convenient trial unit. *Id.* at 311-12.

> "The rule in Illinois is that *res judicata* extends only to the facts and conditions *as they were at the time a judgment was rendered*. When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." (Emphasis added and internal quotation marks omitted.) *Hayashi*, 2014 IL 116023, ¶ 46.

¶ 26    The transactional test is also used to determine if claims are the same for purposes of the single-refiling rule under section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 1994)).[2]  The single refiling rule permits one, and only one, refiling of a claim. *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 17.

---

[2] The currently effective version of section 13-217 is the one codified in the Illinois Compiled Statutes of 1994: that version precedes the amendments to the Code by Public Act 89-7 (eff. Mar. 9, 1995), an act that our supreme court found unconstitutional in its entirety. *E.g.*, *C.*

¶ 27    Initially, we note that the parties cite conflicting cases from our sister states. However, these cases are not binding here and are not persuasive to the extent that they conflict with established Illinois law. See *AAA Disposal Systems, Inc. v. Aetna Casualty & Surety Co.*, 355 Ill. App. 3d 275, 284 (2005).

¶ 28    We first address Miriam's argument that the claim at issue here is based on the same set of operative facts as the Bank's two prior claims because the Bank accelerated the note. Miriam contends that she defaulted only once—November 2009—after which the Bank accelerated the note and made the entire principal amount due. Miriam asserts that she never made another payment on the loan after her default in November 2009 and that the loan was never reinstated or modified.

¶ 29    The Bank counters that this claim is not based on the same set of operative facts as its first two claims because this claim alleges different default dates that occurred after the two prior suits were resolved on the merits in Miriam's favor. Because Miriam prevailed in the two prior suits, she had a continuing contractual obligation to the Bank to make monthly installment payments under the note, and her failure to do such resulted in a new default.[3] We agree with the Bank.

_____

*Szabo Contracting, Inc. v. Lorig Construction Co.*, 2014 IL App (2d) 131328, ¶ 43 & n.4.

[3] The Bank, in its surreply brief, argues a second basis for affirming summary judgment: a second new default—Miriam's failure to pay property taxes due in June 2018. While this second new default was alleged in the Bank's complaint in this case, the Bank did not raise this issue in its motion for summary judgment, and the Bank cites nothing in the record that establishes Miriam's failure to pay property taxes due in June 2018. Thus, it is not a proper basis for summary judgment. Miriam did not address this issue, because the Bank raised it for the first time in its

¶ 30 "Generally, *** where a money obligation is payable in installments, a separate cause of action arises on each installment." *Brown v. Charlestowne Group, Ltd.*, 221 Ill. App. 3d 44, 46 (1991). In *Brown*, we held that *res judicata* did not bar a second cause of action to recover payments the defendant failed to make on an installment contract that came due after the judgment for the plaintiff in the first action. *Id.* We reasoned, "[a]n action for installments due on a contract will not bar a later action to collect installments which subsequently [come] due." *Id.*

¶ 31 Similarly, we recently stated in *Wilmington Savings Fund Society, FSB v. Barrera*, 2020 IL App (2d) 190883, ¶ 19, "*res judicata* does not bar suits for defaults on installment payments whose due dates occur after the filings of the prior complaints." In *Wilmington*, the plaintiff's predecessor in interest, Wells Fargo, filed two complaints—in 2012 and 2014—against the defendant, alleging default " 'for the monthly payments for September 2011 through the present' " and seeking a judgment of foreclosure, the balance due on the note and the mortgage, and a deficiency judgment. *Id*. ¶ 6. The court dismissed the 2012 complaint without prejudice. *Id.* Wells Fargo voluntarily dismissed its 2014 complaint. *Id.* In October 2017, the plaintiff, as Wells Fargo's successor in interest, filed a third complaint, alleging that the defendant defaulted on the note by failing to make installment payments of principal and interest due on June 1, 2012. *Id.* The court dismissed this third complaint, ruling that it was barred because the default dates alleged in the third complaint were at issue in the two earlier complaints. *Id.* In 2018, the plaintiff brought a fourth complaint against the defendant, seeking foreclosure and alleging defaults for failure to (1) reimburse the plaintiff for payments it made for insurance on the property, (2) reimburse the plaintiff for property taxes it paid on the property, (3) pay for insurance on the property directly,

---

surreply brief. Accordingly, the argument is forfeited.

and (4) pay the property taxes on the property directly. *Id.* ¶ 3. The defendant moved to dismiss, arguing that the plaintiff's fourth complaint was barred by the single-refiling rule. *Id.* ¶ 6. The trial court dismissed the fourth complaint because it arose " 'from the same single group of operative facts' " as the three prior lawsuits. *Id.* ¶ 8. The court also denied the plaintiff's motion for leave to file an amended complaint. *Id.* ¶ 9.

¶ 32    Applying the transactional test derived from *res judicata* cases (*id.* ¶ 17), we held that the plaintiff's fourth foreclosure action was not barred by the prior actions, because the defendant's "alleged new failures to pay taxes and insurance are new defaults" (emphasis omitted) (*id.* ¶ 14). We reasoned, "*res judicata* does not bar suits for defaults on installment payments whose due dates occur after the filings of the prior complaints." *Id.* ¶ 19. This "new-default rule," a "specific instance of the transactional test," is necessary to provide remedies for contracts that require performance over a number of years. *Id.* ¶¶ 19-21. Thus, we determined that the defendant's new defaults were not part of the core of operative facts that formed the bases of the prior complaints, because the defendant "allegedly continued to default on her obligation to make tax and insurance payments after those complaints were dismissed." *Id.* ¶ 14.

¶ 33    Applying the reasoning in *Wilmington* here, we determine that *res judicata* does not apply in the circumstances presented by the Bank, because the facts, conditions, and issues involved in the first two cases were different from those in this case. The current action does not arise from the same set of operative facts as the first two actions. In the first two complaints, filed in 2009 and 2017, the Bank alleged that Miriam was in default on the note and the mortgage for failure to pay monthly installments for November 2009. These facts were entirely unrelated to the facts underlying the current action based on Miriam's default for failure to pay installment payments owed in July and August 2018. In the first two cases, the Bank could not have alleged that Miriam

had defaulted in August 2018, because those events had not yet occurred. Indeed, the Bank could not have raised the instant claim, based on Miriam's most recent failures to pay the installment payments, in its earlier complaints, because potential future defaults are generally not justiciable. *Id.* ¶ 21. Because this action and the prior actions were not predicated on a single group of operative facts, the doctrine of *res judicata* did not bar the Bank's foreclosure action at issue.

¶ 34    Miriam argues that the claim at issue is based on the same set of operative facts as the Bank's two prior claims because the Bank accelerated the note. Miriam cites *Deutsche Bank Trust Co. Americas v. Sigler*, 2020 IL App (1st) 191006, to support her argument.

¶ 35    In *Sigler*, the bank brought a fourth foreclosure action against the same mortgagors after the first three actions were voluntarily dismissed. *Id.* ¶¶ 7-19. The trial court dismissed the fourth complaint, finding that the second, third, and fourth complaints all arose out of the same operative set of facts and that, therefore, the fourth complaint violated the single-refiling rule. *Id.* ¶ 26. The first complaint was brought by a different plaintiff. *Id.* ¶ 53. On appeal, the appellate court affirmed, holding that the fourth complaint arose from the same set of operative facts as the second and third claims because the bank accelerated the note. The court reasoned that "the contract became indivisible, and the obligations to pay each installment merged into one obligation to pay the entire balance on the note." *Id.* However, important to this case, the court stated:

"When a mortgagor *prevails* in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or by a dismissal with prejudice, the result is to place the mortgagor and mortgagee back in the same contractual relationship with the same continuing obligations. As a result, a subsequent default by the mortgagor would result in a separate cause of action." (Emphasis added.) *Id.* ¶ 54.

¶ 36    While it is not entirely clear how *Sigler* adjudicated the status of the acceleration clause for future proceedings, we need not reach this question here. *Sigler* determined that a new default was not a part of the operative facts where the bank had given notice of the acceleration of the loan in the prior nonsuited action. *Id.* ¶ 53. It further suggests a different conclusion where the mortgagor, upon trial, prevails on the claim for reasons not related to the validity of the note and/or the mortgage in the earlier foreclosure action. *Id.* ¶ 54. As *Sigler* correctly observes, where the mortgagor prevails in a foreclosure action, the notice of the acceleration is effectively ruled upon and denied, and the mortgage is reinstated. *Id.* Indeed, the reinstatement does not relate to the contract, *per se*, but to the mortgagor's good standing with regard to compliance with the terms of the contract.

¶ 37    Here, Miriam prevailed in the first action and the second action was dismissed with prejudice. Thus, Miriam and the Bank remained in the same status that they were in prior to the litigation, with the same contractual relationship and the same continuing obligations. See *id.* It follows that when Miriam subsequently defaulted in July and August 2018, this new default constituted the basis for a new cause of action. See *id.*

¶ 38    Moreover, even if we were to determine that an identity of causes of action exists in this case and the two prior causes of action and that the threshold requirements of *res judicata* were therefore met, it is well settled that *res judicata* is an equitable doctrine that should be applied only as fairness and justice require. *Murneigh v. Gainer*, 177 Ill. 2d 287, 299 (1997). Equity dictates that the doctrine of *res judicata* should not be technically applied if to do so would be fundamentally unfair or would create inequitable or unjust results. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001). It is intended to be used as a shield, not a sword. *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1116 (2001). " 'Although it is recommended that

the doctrine receive a liberal construction and should be applied without technical restrictions, it has also been recommended that the doctrine should not be applied so rigidly as to defeat the ends of justice. [Citation.]' " *Id.* (quoting *Thornton v. Williams*, 89 Ill. App. 3d 544, 546 (1980)).

¶ 39    To apply *res judicata* here and grant Miriam the relief she seeks would be fundamentally unfair. Miriam urges us to reverse the court's order of summary judgment in the Bank's favor and enter judgment in her favor. This would reward Miriam for disregarding the note and the mortgage she signed and then failed to pay on for almost nine years. The Bank, reasonably expecting compliance with the mortgage and the note, would be left with nothing and Miriam would retain the property that secured the repayment of the loan that enabled her to obtain said property. Because this would be fundamentally unfair and unjust, we would decline to apply *res judicata* here even were its applicability apparent.

¶ 40    Miriam also urges us to vacate the trial court's order granting the Bank summary judgment and to remand the case for further proceedings, arguing that a genuine issue of material fact exists as to when she defaulted on the loan by failing to pay monthly installments of principal and interest. We disagree.

¶ 41    In Miriam's affidavit attached to her response to the Bank's motion for summary judgment, she attested that she made no "payments to the [Bank] since the default" alleged in the first action—failure to pay principal, interest, and late fees, in November 2009. As stated earlier, Miriam prevailed in the first foreclosure action and the Bank's second foreclosure action was dismissed with prejudice. Thus, Miriam and the Bank remained in the same contractual relationship with the same continuing obligations. See *Sigler*, 2020 IL App (1st) 191006, ¶ 54. As such, Miriam had a continuing obligation to pay each monthly installment payment of principal and interest as required by the note and secured by the mortgage. Miriam's affidavit leaves no

doubt that she failed to make installment payments in July and August 2018, and therefore the affidavit established a new default. Thus, there is no genuine issue of material fact and the Bank is entitled to judgment as a matter of law. Accordingly, the trial court properly granted the Bank summary judgment.

¶ 42    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 43                                III. CONCLUSION

¶ 44    The judgment of the circuit court of McHenry County is affirmed, and the stay of the court's order awarding possession is vacated.

¶ 45    Affirmed.

---

**No. 2-20-0099**

---

| | |
|---|---|
| **Cite as:** | *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 2018-CH-631; the Hon. Michael J. Chmiel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Arthur C. Czaja, of Niles, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Samuel G. Harrod IV, of Meltzer, Purtill & Stelle LLC, of Schaumberg, for appellee. |

---