**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230208-U

Order filed May 10, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| LAW OFFICES OF EDWARD P. GRAHAM, LTD., | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0208 Circuit No. 22-SC-5531 |
| JAMES KORNESCZUK, as Trustee of the Korneszczuk Family Trust, | ) ) ) | Honorable Thomas A. Else, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Holdridge specially concurred.
Justice Albrecht dissented.

_____

**ORDER**

¶ 1    *Held*:  The trial court's prior adjudication of a billing dispute does not bar attorney's current action to recover unpaid legal fees where former client's nonpayment of fees persisted after the prior judgment's entry. Upon modifying the original bill, the prior judgment renewed the former client's money obligation and thereby renewed the attorney's right to collect.

¶ 2    Plaintiff, the Law Offices of Edward P. Graham, Ltd., appeals the dismissal of its complaint

to recover unpaid fees against defendant and former client, James Korneszczuk, in his capacity as

trustee of the Kornesczuk Family Trust (Trust). The parties dispute whether *res judicata* bars plaintiff's complaint, where plaintiff withdrew a counterclaim in a prior action stemming from the same contractual relationship underlying plaintiff's current complaint. Because defendant's nonpayment persisted after judgment was entered in the prior action, *res judicata* was improperly applied. Accordingly, we reverse and remand.

## I. BACKGROUND

In August 2017, defendant retained plaintiff to represent the Trust in a guardianship case involving his mother, Nora Kornesczuk. Defendant signed an engagement agreement and paid an initial retainer of $2500 to be applied toward plaintiff's fees. Thereafter, from August through September 2017, plaintiff represented defendant in the guardianship case and sent him a series of invoices, billing him $12,815.03. Defendant paid plaintiff a total of $4000 in September and October 2017. Defendant did not remit any payments thereafter.

Plaintiff continued to represent defendant until November 1, 2017, and subsequently billed defendant $1,681.09 for services rendered through that date. (Thus, plaintiff billed defendant a total of $14,496.12, and defendant paid plaintiff a total of $6500.) Plaintiff's final invoice sought an outstanding balance of $7,996.12. Thereafter, between March 2018 and June 2019, plaintiff periodically sent defendant invoices for the outstanding balance of $7,996.12.[1]

### A. Case I

In August 2019, defendant *pro se* filed a small claims complaint against plaintiff and its owner, attorney Edward P. Graham, claiming Graham and his law practice were indebted to him in the amount of $10,000. Defendant alleged Graham delegated the guardianship matter to an

---

[1]Each invoice was addressed to "Estate of Nora Kornesczuk c/o Mr. James Kornesczuk," corresponding to the parties' engagement agreement, which misidentified the client as the Estate of Nora Kornesczuk, rather than the Trust.

2

inexperienced attorney whose poor representation resulted in an unfavorable outcome for the Trust. In September 2019, plaintiff *pro se* filed a counterclaim for $7,996.12, the outstanding balance of its legal fees, in addition to accrued interest and court costs. Plaintiff alleged Kornesczuk had individually agreed, through a series of promises, to pay plaintiff's fees. Attached as exhibits to plaintiff's counterclaim were copies of (1) the engagement agreement, (2) invoices sent to defendant, and (3) an August 2017 email addressed to Graham and his associate attorney. In the email, defendant stated, "I will see to it that you are paid, but without any cash and without any way to get out cash without liability \*\*\*, we may need a different [billing and payment] arrangement."

¶ 8   In March 2020, defendant, through counsel, filed an amended complaint for breach of contract and fraud. Defendant alleged plaintiff breached the engagement agreement by overbilling him in the amount of $7619. Under the fraud count, defendant alleged Graham induced him to enter an engagement agreement by representing that his practice specialized in guardianship litigation, only to then assign the case to an associate attorney with no experience in guardianship matters. Under both counts, defendant alleged damages in the amount of $7619 (*i.e.*, the sum of the alleged excessive billing charges) and requested "an award of prejudgment interest, costs, and attorney's fees, and for such further relief as [the trial court] deems equitable and just." According to the amended complaint, plaintiff's invoices totaled $14,496.12, of which defendant had paid $6500.

¶ 9   In April 2020, plaintiff retained counsel and filed an amended counterclaim seeking the outstanding balance of $7,996.12 (*i.e.*, $14,496.12 reduced by $6500), in addition to accrued interest, in the amount of $2,133.32, and legal costs. The amended counterclaim's allegations identified Kornesczuk as "the trustee of the KORNESCZUK FAMILY TRUST" but its caption

did not do so, despite the amended claim being brought by Kornesczuk in his capacity as trustee. Much like the original counterclaim, the amended counterclaim attached plaintiff's invoices and the parties' engagement agreement as exhibits; however, the amended counterclaim did not attach the August 2017 email as an exhibit.

¶ 10 A trial was held on the matter. The court heard evidence on April 27 and May 19, 2021, and issued its decision on August 27, 2021. Plaintiff voluntarily dismissed its amended counterclaim in early July 2021, before the court issued its ruling. On July 6, 2021, the court entered an order setting the matter for a final decision and stating, "On the oral motion of the counter plaintiff, the amended counter complaint is dismissed with prejudice and without costs over the objection of the counter defendant."

¶ 11 On August 27, 2021, the court issued its decision in open court:

"I find that the hourly rate of Mr. Graham in the amount of $350 per hour is reasonable and that of his associate *** of $300 per hour is likewise reasonable based on what other lawyers in DuPage County with similar background charge for the same or similar services.

I further find that the fees charged for clerical and paralegal services are reasonable and de minimis. ***

With the exception of what I'm about to discuss, I find that the services performed by Mr. Graham's office were fair and necessary.

* * *

So, in sum, the following fees are disallowed: August 1st, 2017, $1,070; August 17th, $900; August 31st, 2017, $870; November 1st, 2017, $1,050; the amount billed after the withdrawal [of representation] of $116. The total judgment

4

in favor of [Kornesczuk, as trustee] and against [Graham's office] is $4,006, and I will prepare that judgment."

The court entered a written order the same day. The order provided, "For the reasons stated on the record, Count II of the Plaintiff's Amended Complaint [fraud] is dismissed with prejudice. With respect to Count I [breach of contract], judgment is entered for Plaintiff and against the Defendant in the amount of $4006.00 plus costs of suit."

¶ 12   Plaintiff filed a motion to reconsider, disputing the court's reduction of its attorney fees for August 17, 2017, by $900. The court denied plaintiff's motion on November 23, 2021. Plaintiff did not appeal the denial of its motion to reconsider or the court's August 27, 2021, decision.

¶ 13                                B. Current Case

¶ 14   On November 15, 2022, plaintiff filed a breach of contract suit against defendant, claiming defendant had not paid the outstanding legal fees after crediting defendant for the $6500 already paid and the $4006 disallowed in Case I. According to plaintiff, the outstanding balance was now $3,916.72.

¶ 15   Defendant moved to dismiss under section 2-619(a)(4) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(4)) (West (2022)) (Code), arguing *res judicata* barred plaintiff's claim. On April 6, 2023, the court granted defendant's motion. Its oral ruling provided as follows:

"This case was first heard by this Court several years ago. The plaintiff in the first case, hereinafter referred to as 'Graham One,' was James Kornesczuk, the trustee of the Kornesczuk Family Trust.

In sum, the complaint alleged that the defendant, the Law Offices of Edward Graham, had overbilled the plaintiff. Defendant Graham filed a countercomplaint and an amended countercomplaint, which was dismissed with prejudice on July

5

5th, 2021 on the oral motion of the counter-plaintiff, Graham, without costs, over the objection of the — over the objection of the counter-defendant.

That countercomplaint sought legal fees against the counter-defendant and plaintiff, James Kornesczuk, and is, for practical purposes, a mirror image of the complaint filed in this case, except that the complaint in this case documents the proceedings at the previous trial.

At the conclusion of the first trial, the Court ruled in favor of the plaintiff for the reasons stated on the record, entered judgment in the amount of $4,006, plus costs of suit. The defendant in Graham One filed a motion for reconsideration, which was denied. The case was not appealed.

The current complaint alleges, in sum, that there were legal fees owed to Graham over and above the 4,006 judgment entered for Kornesczuk. The argument goes thusly: Graham is allegedly owed $7,922.72, or thereabouts, pursuant to a fee agreement. The Court's judgment order of $4,006 is a set-off against that amount, leaving a balance of $3,916.72, plus interest, et cetera, to which Graham is entitled.

The problem that the plaintiff in this case has is that the countercomplaint, which was dismissed with prejudice at his request, was the identical cause of action which is pleaded in this case in every way. The reason that there was no judgment entered for Graham in Graham One was that Graham withdrew his countercomplaint, for whatever reason, with prejudice.

Graham now argues that said dismissal should not count because the Court's ruling was an advisory opinion. The Court's ruling was not an advisory opinion, it was a money judgment for what the Court found was a partial breach of

6

contract. If Graham had wanted a money judgment in Graham One, he should not have dismissed his countercomplaint with prejudice.

Res judicata is a well-known legal concept that a further recitation in this ruling is unnecessary. Graham had the chance to litigate this issue in the prior case, but for reasons known only to him and his attorney decided not to. Res judicata demands that the defendant's motion be granted. Case dismissed."

¶ 16     The court entered a written order providing, "For the reasons stated on the record, the motion to dismiss filed by the defendant is granted. Case dismissed with prejudice. Strike future dates. Case closed." This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18     A section 2-619 motion to dismiss asserts affirmative matter to avoid or defeat a claim while admitting the complaint's legal sufficiency, all well-pled facts, and the reasonable inferences to be drawn from those facts. 735 ILCS 5/2-619 (West 2022). When ruling on a motion to dismiss, all pleadings and supporting documents are viewed in a light most favorable to the nonmoving party. *Lucas v. Taylor,* 349 Ill. App. 3d 995, 998 (2004). We review the complaint's dismissal *de novo*. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7.

¶ 19     "One defense that a defendant may raise in a section 2-619 motion is that a prior judgment bars the plaintiff's cause of action, *i.e.*, that the prior judgment has *res judicata* effect in the subsequent lawsuit." *Kasny v. Coonen & Roth, Ltd.*, 395 Ill. App. 3d 870, 873 (2009) (citing 735 ILCS 5/2-619(a)(4) (West 2008)). "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand, or cause of action." *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9. "The bar extends not only to all matters

7

that were actually decided but also to those matters that could have been decided in the prior action." *Id.* The party invoking *res judicata* bears the burden of demonstrating its application. *Kasny*, 395 Ill. App. 3d at 873. "*[R]es judicata* is an equitable doctrine that should be applied only as fairness and justice require." *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 38. "Equity dictates that the doctrine of *res judicata* should not be technically applied if to do so would be fundamentally unfair or would create inequitable or unjust results." *Id.* Our review of a complaint's dismissal on *res judicata* grounds is *de novo*. *Buchanan v. Legan*, 2017 IL App (3d) 170037, ¶ 22.

¶ 20    Plaintiff argues defendant's *res judicata* defense does not apply. According to plaintiff, its counterclaim in Case I was not identical to its current claim because while its counterclaim was filed against Korneszczuk individually, this claim was filed against Korneszczuk as trustee. Plaintiff further argues its breach of contract claim does not seek to nullify the judgment in Case I, which was merely a declaratory judgment against plaintiff. Finally, plaintiff argues the "ongoing harm" and "extraordinary reason" exceptions to *res judicata* apply to prevent what would amount to a "windfall double recovery" for defendant.

¶ 21    In response, defendant maintains this case satisfies each of the elements of *res judicata* and does not fall into any of the doctrine's established exceptions. He argues plaintiff's election to file a counterclaim in Case I, rather than a third-party complaint, suggests it intended to bring a claim against the Trust rather than defendant in his individual capacity. Defendant further argues the outcome of Case I was not a declaratory judgment, but rather a $4006 monetary judgment. Finally, defendant argues *res judicata* applies because plaintiff could have litigated its claims against the Trust in Case I yet chose not to do so.

¶ 22       *Res judicata* applies if the following three requirements are met: (1) a final judgment on the merits by a court of competent jurisdiction, (2) identity of cause of action, and (3) identity of parties or their privies. *Wilson*, 2012 IL 112898, ¶ 9.

¶ 23                                    A. Final Judgment on the Merits

¶ 24       Defendant argues plaintiff's voluntary dismissal of its counterclaim in Case I was a final judgment on the merits. He cites Illinois Supreme Court Rule 273, which states that, except in a few circumstances, "an involuntary dismissal of an action *** operates as an adjudication upon the merits." Ill. S. C. R. 273 (eff. Jan. 1, 1967). This rule is inapplicable here as plaintiff has *voluntarily* dismissed its counterclaim. "Rule 273 applies only to an involuntary dismissal of an action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 335 (1996). Even so, plaintiff's voluntary dismissal was with prejudice. Generally, a "dismissal with prejudice is an adjudication on the merits for purposes of the application of the doctrine of *res judicata.*" *Mann v. Rowland*, 342 Ill. App. 3d 827, 836 (2003); see also *Van Slambrouck v. Marshall Field & Co.*, 98 Ill. App. 3d 485, 487 (1981) ("A dismissal with prejudice is tantamount to an adjudication on the merits.").

¶ 25       Plaintiff argues its voluntary dismissal with prejudice should not bar its present claim against defendant, Kornesczuk *as trustee*, because its decision to voluntarily dismiss its counterclaim was motivated by a realization that Kornesczuk was not *individually* liable for the failure to pay plaintiff's invoices. Plaintiff's argument, which implicates *res judicata*'s identity-of-parties requirement, is unavailing. "An attorney's subjective motivation in taking a voluntary dismissal is not part of a *res judicata* analysis." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 478 (2008).

¶ 26       Moreover, even if plaintiff's voluntary dismissal of its counterclaim did not constitute a final judgment, the court's adjudication of *defendant's claim* following a bench trial is a final

9

judgment on the merits for purposes of *res judicata*. The first requirement of *res judicata* is thus met.

¶ 27                                    B. Identity of Cause of Action

¶ 28        Next, the parties dispute the existence of an identity of cause of action. "In determining whether there is an identity of causes of action for purposes of *res judicata,* Illinois courts apply a transactional test." (Internal quotation marks omitted.) *Ross Advertising, Inc. v. Heartland Bank & Trust Co.*, 2012 IL App (3d) 110200, ¶ 34. "Under this test, separate claims will be considered the same cause of action if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* We approach this inquiry "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (Internal quotation marks omitted.) *First Midwest Bank v. Cobo*, 2018 IL 123038, ¶ 19.

¶ 29        Plaintiff's claim in this case and his counterclaim in Case I both request unpaid legal fees arising from the same engagement agreement, executed in August 2017. However, while the counterclaim sought an outstanding balance based solely on plaintiff's invoices, the current claim seeks a reduced amount that purports to account for the trial court's judgment in Case I.

¶ 30                                    1. *Nature of Prior Judgment*

¶ 31        The parties fundamentally disagree as to the nature of the trial court's judgment in Case I. Plaintiff maintains the court issued a declaratory judgment, disallowing $4006 of the $14,496.12 billed by plaintiff and thereby reducing the remaining balance owed from $7,922.72 to $3,916.72. Defendant, in contrast, maintains the trial court upheld only $2500 of the $14,496.12 billed by plaintiff. According to him, plaintiff's "billing practices were so egregious" that the trial court not

10

only absolved plaintiff of any liability on the unpaid fees, but also required plaintiff to repay the Trust $4006 of the $6500 previously paid.[2]

¶ 32       The record overwhelmingly supports plaintiff's interpretation. In Case I, the court summarized its ruling as follows:

> "So, in sum, the following fees are disallowed: August 1st, 2017, $1,070; August 17th, $900; August 31st, 2017, $870; November 1st, 2017, $1,050; the amount billed after the withdrawal [of representation] of $116. The total judgment in favor of [Kornesczuk, as trustee] and against [Graham's office] is $4,006[.]"

The court expressly *disallowed* a total of $4006 in legal fees. It is no coincidence that the disallowed fees—in the amounts of $1070, $900, $870, $1050, and $116—yield a sum of $4006. The judgment was "in favor of" defendant, therefore, because it reduced the Trust's total liability by $4006.

¶ 33       Yet defendant insists plaintiff's "billing practices were so egregious" that the court decided plaintiff should not have received more than $2500 for all of its work on the guardianship case. Such an interpretation finds no support in the record. First, it would necessitate the court to have disallowed nearly $12,000 of the $14,496.12 billed by plaintiff. Second, it contradicts the court's findings that (1) plaintiff's hourly rates were reasonable, (2) plaintiff's fees for clerical and paralegal services were reasonable and *de minimus*, and (3) except for services linked to the disallowed fees, plaintiff's services were fair and necessary. Third, it is contradicted by defendant's own admission at oral argument that he did not attempt to collect a "repayment" after Case I's termination. In view of the record, we see no indication the trial court intended to absolve

---

[2] $6500 less $4006 yields $2494, just shy of $2500.

defendant of all liability on the outstanding fees, let alone to transfer defendant's liability onto plaintiff.

¶ 34 We acknowledge the trial court, in its oral ruling on the motion to dismiss, stated its judgment in Case I was a money judgment, and not an advisory opinion. We agree in part. "An opinion is advisory if it is impossible for [the] court to grant effectual relief to either party." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 20. The court's prior judgment was not an advisory opinion where it granted defendant effectual relief by reducing the Trust's money obligation to plaintiff. Having said that, we fail to see how the prior judgment was a money judgment. A money judgment is defined as a "judgment for damages subject to immediate execution." Black's Law Dictionary (11th ed. 2019). Although the court called its prior judgment a money judgment, it did not go so far as to say it was for damages or that it required plaintiff to *pay* (or *repay*) the Trust. In fact, the court never contradicted plaintiff's understanding that the $4006 judgment was a set-off against the original balance of unpaid fees.

¶ 35 Plaintiff argues the judgment in Case I was a declaratory judgment. A "declaratory judgment" is defined as "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." Black's Law Dictionary (11th ed. 2019). Here, the trial court's judgment (1) established the parties' rights in relation to plaintiff's invoices by disallowing $4006 in fees (2) without requiring either party to pay a specified sum to the other side. Thus, while the judgment could be loosely termed a "money judgment" to the extent it adjudicated a money obligation, it was a textbook example of a declaratory judgment.

¶ 36 "The declaratory judgment procedure allows the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which

give rise to claims for damages or other relief." (Internal quotation marks omitted.) *Ludwig*, 376 Ill. App. 3d at 101. In his motion to dismiss, defendant stated, "When [plaintiff] continued to bill Defendant exorbitant amounts *** Defendant took the *proactive step* of requesting the Circuit Court to decide whether the amounts claimed by [plaintiff] were meritorious." (Emphasis added.) Defendant's characterization of his lawsuit in Case I as a "proactive step" is consistent with the facts of this case and with the nature of a declaratory judgment action.

¶ 37    The essential requirements of a declaratory judgment action are (1) a plaintiff with a legal tangible interest, (2) a defendant having an opposing interest, and (3) an actual controversy between the parties concerning such interests. *Brandt Construction Co. v. Ludwig*, 376 Ill. App. 3d 94, 101 (2007). A legal tangible interest is "some personal claim, status, or right which is capable of being affected by the grant of [declaratory] relief." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 493 (1988). The parties' billing dispute in Case I meets all three requirements of a declaratory judgment action.

¶ 38    Nevertheless, defendant contends his claim did not seek declaratory relief because the conduct giving rise to the claim—plaintiff's representation of the Trust—occurred well before he filed his claim, and there was no chance of future conduct that could serve as the basis for a declaratory judgment. He cites the principle that declaring nonliability for past conduct is not a function of a declaratory judgment action. See *Howlett v. Scott*, 69 Ill. 2d 135, 143 (1977). We reject defendant's attempt to apply the "nonliability for past conduct" principle to *plaintiff's* conduct in representing the Trust rather than to defendant's ongoing payment delinquency, which continued after he filed his complaint in Case I. Where defendant's nonpayment persisted through the date of filing, it was not past conduct.

13

¶ 39        Finally, defendant's contention fails even assuming his flawed interpretation of the "nonliability for past conduct" principle. The principle does not define a declaratory judgment; instead, it states a criterion for a *properly entered* declaratory judgment. In other words, whether the court *should* have issued a declaratory judgment does not change the fact that its prior judgment was a declaratory judgment.[3]

¶ 40        Through its declaratory judgment, the court modified and authoritatively established the Trust's liability as it related to plaintiff's legal fees. By disallowing only some of plaintiff's fees, the court necessarily allowed the rest of plaintiff's fees, which the court found were based on reasonable rates and services that were "fair and necessary." Thus, upon final judgment in Case I, the Trust owed plaintiff the outstanding balance of fees that the court had implicitly allowed to stand.

¶ 41                              2. *Separate Causes of Action*

¶ 42        Having established the nature of the judgment in Case I, we return to the second requirement of *res judicata*—identity of cause of action. "Under *res judicata* principles, a defendant's continuing course of conduct, even if related to conduct complained of in an earlier action, creates a separate cause of action." (Internal quotation marks omitted.) *Wilmington Savings Fund Society, FSB v. Barrera*, 2020 IL App (2d) 190883, ¶ 19. "Put another way, one course of conduct may give rise to a second cause of action when that conduct persists after the original judgment." *Id.* "Thus, an earlier judgment relating to a course of conduct does not bar claims for

_____

[3]Moreover, defendant's recitation of the principle overlooks its reasoning. The principle states, "A declaratory judgment action is not the vehicle for a declaration of nonliability for past conduct, *as it deprives the potential plaintiff of his right to determine whether he will file, and, if so, when and where*." (Emphasis added and internal quotation marks omitted.) *Travelers Indemnity Co. of America v. Townes of Cedar Ridge Condominium Ass'n*, 2022 IL App (3d) 200542, ¶ 10. By taking a "proactive step" to limit the Trust's liability with respect to plaintiff's invoices, defendant conceivably deprived plaintiff of its right to determine whether to file, and if so, when and where.

14

continuing conduct complained of in the second lawsuit that occur[s] after judgment has been entered in the first lawsuit." (Internal quotation marks omitted.) *Id.*

¶ 43 After judgment was entered in Case I, defendant continued to disregard its (now reduced) debt to plaintiff. Defendant's "continuing course of conduct" in failing to pay the outstanding balance of plaintiff's legal fees created a separate cause of action for purposes of *res judicata. Id.* The second requirement of *res judicata* is therefore not met.

¶ 44 The dissent opines that "the claims asserted in the previous action, including plaintiff's original counterclaim, arise from the same group of operative facts as the claim in the instant case." *Infra ¶* 62; see *Ross Advertising, Inc.*, 2012 IL App (3d) 110200, ¶ 34 (separate claims are considered the same cause of action if they arise from a single group of operative facts). Crucially, the dissent's position overlooks the practical implications of the trial court's prior judgment. *Cobo*, 2018 IL 123038, ¶ 19 (*res judicata*'s transactional test is a pragmatic inquiry). By disallowing some of plaintiff's fees, the judgment abrogated plaintiff's invoices such that plaintiff could no longer rely on those invoices as self-contained evidence of debt. From that point forward, plaintiff's right to collect was no longer based on its invoices alone, but on a judgment that had modified the invoices and authoritatively established the Trust's liability.

¶ 45 In short, plaintiff's counterclaim and the current complaint did not arise from the same group of operative facts. While plaintiff's invoices constituted the chief "operative facts" underlying its counterclaim in Case I, plaintiff's current complaint goes beyond its invoices in seeking to enforce the court's declaratory judgment—a judgment that did not exist when plaintiff filed its counterclaim. In deciding whether separate claims are the same cause of action, courts consider whether the claims' operative facts are "related in time, space, origin, or motivation." *Id.* Here, plaintiff's invoices and the trial court's declaratory judgment are disconnected in time,

15

origin, and motivation. A pragmatic assessment of the operative facts confirms that plaintiff's claims constituted separate causes of action.

¶ 46 This conclusion aligns with the principles of fairness and justice underlying the doctrine of *res judicata*. See *Moy*, 2021 IL App (2d) 200099, ¶ 38. By merely reducing the original bill, the court's prior judgment renewed the Trust's money obligation and, in turn, conferred on plaintiff a renewed right to collect.

¶ 47 Where *res judicata*'s second requirement is not met, we need not address the doctrine's identity-of-parties requirement or its "ongoing harm" and "extraordinary reason" exceptions. Defendant's motion to dismiss was improvidently granted.

¶ 48 III. CONCLUSION

¶ 49 The judgment of the circuit court of Du Page County is reversed and remanded for further proceedings.

¶ 50 Reversed and remanded.

¶ 51 JUSTICE HOLDRIDGE, specially concurring:

¶ 52 I concur with the majority's ruling that *res judicata* should not bar the claim at issue, however, I would reach this conclusion because it would be fundamentally unfair to do otherwise.

¶ 53 As the majority points out, "*res judicata* is an equitable doctrine that should be applied only as fairness and justice require." *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 38. "Equity dictates that the doctrine of *res judicata* should not be technically applied if to do so would be fundamentally unfair or would create inequitable or unjust results." *Id.*

¶ 54 Illinois has adopted Section 26(1) of the Restatement (Second) of Judgments which lists the various exceptions to *res judicata*. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 472-73 (2008) (citing *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 341 (1996)). Under Section 26(1),

16

*res judicata* would not bar a second action if: (1) the parties have agreed in terms or effect that the plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason. *Hudson*, 228 Ill. 2d at 472-73.

¶ 55      It has not been suggested by anyone that exceptions (1) through (4) should apply. The plaintiff and the majority have stated that section (5) should apply because there is a recurrent wrong which is still ongoing, *i.e.*, the continued nonpayment of attorneys' fees owed to the plaintiff by the defendant. Whether this could or should be considered an ongoing wrong is obviously debatable, however, I believe that exception (6) provides a simpler, more straightforward method to ensure justice is achieved in the present case.

¶ 56      The Restatement (Second) of Judgments states that *res judicata* should not preclude relitigation of a cause of action if "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty or *the failure of the prior litigation to yield a coherent disposition of the controversy*." (Emphasis added.) Restatement (Second) of Judgments § 26(1)(f) (1982). "Such an exception is not lightly to be found and must be based on a clear and convincing showing of need." *Id.*, n.i. "Confined within proper limits, this concept is central to the fair administration of the doctrine of *res judicata*." *Id.*

¶ 57    The plaintiff and the majority state that the record suggests the trial court did not intend to absolve the defendant of all liability on the outstanding fees. I agree. There was nothing in the record to suggest that the trial court found the Trust is not liable for the remaining attorney fees after the money damages judgment of $4,006.00 for partial breach of contract was deducted from the remaining balance of $7,996.12. As the majority points out, there was ample evidence that the trial court intended that the Trust should pay the remainder of the plaintiff's attorney fees.

¶ 58    When the trial court delivered its judgment in *Graham I*, it was still unknown whether the Trust would pay the remaining balance of attorney fees, and the plaintiff did not need a judgment at that time to be owed or to collect the remaining balance. However, because of the unusual procedural history of the case, if the Trust did not pay the remainder of its legal fees, and we know it did not, *res judicata* would apply, potentially barring the plaintiff from bringing a suit seeking to collect from the Trust. Yet on August 27, 2021, when the trial court gave its judgment in *Graham I*, it gave every indication that it did not intend to absolve the Trust of all liability on the outstanding fees, but at that time there was no way for the plaintiff to know whether the Trust was going to pay until it was too late to seek a judgment from the court. The plaintiff was in a situation where he could not collect once he knew for certain that the defendant was not going to pay.

¶ 59    For the reasons listed in the majority's opinion and mentioned above, there was a failure of the prior litigation to yield a coherent disposition of the controversy, and for this reason I believe the present appeal involves an extraordinary reason to overcome *res judicata*. Upholding the dismissal of *Graham II* due to *res judicata* would (1) allow the trustee to avoid paying a balance of attorneys' fees that was effectively set by the trial court, and (2) allow the Trust to reap a double recovery of damages at the plaintiff's expense. The reason it would be a double recovery is that, if the plaintiff is not allowed to proceed in *Graham II*, the ruling of the trial court has not only reduced

the plaintiff's invoices by $4,006.00, but it has then additionally required the plaintiff to pay $4,006.00 to the Trust. To force this outcome in order to adhere to a rigid application of *res judicata* would be fundamentally unfair and is precisely why exceptions were made for the rule.

¶ 60        JUSTICE ALBRECHT, dissenting:

¶ 61        I respectfully dissent from the majority's ruling that *res judicata* does not bar the claim at issue. I disagree with the majority's analysis that identity of a cause of action does not exist and would hold that all three requirements of *res judicata* have been met, barring plaintiff from pursuing this claim.

¶ 62        The second requirement of *res judicata*, identity of a cause of action, establishes that if the claim involves the same operative facts as a claim in the original proceeding, *res judicata* may bar a party from raising his or her claim in a subsequent action. *Torcasso v. Standard Outdoor Sales, Inc.*, 232 Ill. App. 3d 500, 503-04 (1993). Here, the claims asserted in the previous action, including plaintiff's original counterclaim, arise from the same group of operative facts as the claim in the instant case.

¶ 63        The majority recognizes that the continuing course of conduct exception may provide a party relief from *res judicata* and applies this exception to the case before us. *Supra* ¶ 42. However, there is no "course of conduct" here. Repeated action or a series of acts demonstrating continuity of purpose creates a course of conduct, not the single, yet ongoing, act of not paying an invoice.

¶ 64        A continuing course of conduct suggests more than one act is necessary, which shows an intent to continue the violating conduct. See *e.g.*, *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) (continuing violations are the continued acts, not the continuation of a single wrong). The recurring wrong in the "course of conduct" exception allows for a subsequent claim because the

19

continuing conduct creates a successive injury that constitutes a separate cause of action. See *Kidney Cancer Ass'n v. North Shore Community Bank and Trust Co.*, 373 Ill. App. 3d 396, 400 (2007) (continuing course of conduct is numerous separate transactions, not one continuing transaction). Further, the precedent utilizing this doctrine demonstrates that "course of conduct" refers to repeated activity constituting separate claims, such as continuing to default on installment payments and continued actions that constitute harassment or nuisance violations. See *e.g.*, *Wilmington Savings Fund Society, FSB*, 2020 IL App (2d) 190883 (installment payments); *Raabe v. Messiah Evangelical Lutheran Church,* 245 Ill. App. 3d 539 (1993) (continuing nuisance); *Green v. Illinois Department of Transportation*, 609 F. Supp. 1021 (1985) (continuing harassment). The continued conduct in these cases resulted in either a new injury or compounded the injury already received.

¶ 65        Here, there is one single act – lack of payment on an attorney's invoice. No additional work was performed after litigation of the first proceeding that would create a new bill or further injury. With no new services being performed that would add to the invoice, there will always only be one single action of nonpayment. This single action is not a continuing course of conduct and does not create a new injury from which plaintiff may recover. See *Kidney Cancer Ass'n*, 373 Ill. App. 3d at 400.

¶ 66        The last requirement of *res judicata*, identity of parties or their privity, is clearly met here as well. See *Indian Harbor Ins. Co. v. MMT Demolition, Inc.*, 2014 IL App (1st) 131734, ¶ 41. Privity exists between "parties that adequately represent the same legal interests." *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, ¶ 23. "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *People ex rel. Burris v. Progressive Land Developers, Inc.,* 151 Ill. 2d 285, 296 (1992). While plaintiff names defendant as the trustee

20

of the Kornesczuk trust in the current claim, instead of individually as in his original counterclaim, the two parties are one in the same. The legal interest between defendant as an individual or as trustee is identical—the obligation to pay for work performed for the benefit of the trust. Thus, the identity of parties requirement is clearly met.

¶ 67    The purpose of *res judicata* is to prevent the multiplicity of lawsuits between causes of action that involve the same parties and the same facts and issues. See *Murneigh v. Gainer*, 177 Ill. 2d 287, 299 (1997). It acts to bar the parties from relitigating causes of action that were raised in an earlier lawsuit and also those claims that could have been raised in the earlier litigation. *Hudson*, 228 Ill. 2d at 467 (2008). Here, not only could plaintiff's claim be raised in the earlier lawsuit, it was, in fact, raised in the form of a counterclaim. Plaintiff chose to voluntarily dismiss that claim with prejudice, barring him from raising it again now. I would therefore conclude that all three requirements implicating *res judicata* are met and would affirm the circuit court's ruling.